UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY and AMERICAN MOTORISTS INSURANCE COMPANY,

Plaintiffs,

v.

CAROTHERS CONSTRUCTION INC., DAVID L. CAROTHERS, and TERRI L. CAROTHERS,

Defendants.

NO. 2:05-cv-00122-MCE-GGH

MEMORANDUM AND ORDER

----oo0oo----

Through the present action, Plaintiff American Manufacturers Insurance Company ("American Manufacturers") seeks to enforce the provisions of a General Indemnity Agreement (the "Indemnity Agreement") executed by Defendant Carothers Construction, Inc. ("CCI") as a prerequisite to American Manufacturers' issuance of security bonds applicable to CCI's public works construction project with the City of Folsom ("City").

American Manufacturers ultimately incurred substantial completion costs on the project after Folsom declared CCI to be in default and demanded that American Manufacturers become involved. American Manufacturers now moves for partial summary judgment against CCI (and David and Terri Carothers, individually) as to its First Cause of Action, for Breach of the Indemnity Contract, and the Third Cause of Action, for statutory reimbursement under California Civil Code § 2847[1] against CCI, only. As set forth below, that Motion is granted in part and denied in part.

**BACKGROUND[2]**

On or about March 12, 2002, CCI entered into a contract with the City for construction of Folsom Fire Station #35 (the "Folsom Project"). At CCI's request, and as a prerequisite for award of the project, American Manufacturers issued a performance bond on behalf of CCI, as principal, in connection with the Folsom Project.

[1] The Court's jurisdiction in this matter is predicated on diversity of citizenship pursuant to 28 U.S.C. §1441(b). The parties agree that California law applies inasmuch as the Indemnity Agreement contains a choice of law provision specifically providing that it "shall be interpreted under the substantive law of the State of California, USA." Indemnity Agreement, Exh. 1 to the Decl. of Stephen J. Beatty, p. 4.

[2] Some of the factual allegations as set forth in this section are disputed by the parties. To the extent either party has interposed evidentiary objections to these facts, however, those objections are overruled unless otherwise noted. Additionally, this section incorporates the facts considered by the Court in ruling on this motion. The Court need not rule on objections to evidence not discussed below, and declines to do so, because that evidence was not germane to the Court's decision.

Both CCI and its owners, David and Terri Carothers, were signatories on the Indemnity agreement executed in connection with issuance of the performance Bond on the Folsom Project. All parties to that Agreement acknowledged that American Manufacturers would not have issued the performance bond without Defendants' commitment, as Indemnitors, to reimburse American Manufacturers for all losses arising under the bond. (See Indemnity Agreement, p. 1, attached as Exh. 1 to the Decl. of Stephen J. Beatty). The Indemnity Agreement defines that obligation on page 2, paragraph 1, as follows:

> Indemnitors agree to indemnify and hold harmless Surety [American Manufacturers] immediately upon demand for any and all Loss sustained or incurred by reason of having executed any and all Bonds.

The Indemnity Agreement goes on to define the term "Loss" as follows:

> Loss includes all sums: (a.) paid by Surety to claimants under the Bonds, (b.)sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, including but not limited to legal fees and expenses, technical and expert witness fees and expenses and (d.) all costs and expenses incurred in connection with enforcing the obligations of the Principal and Indemnitors under this Agreement including, but not limited to legal fees and expenses... and (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

Id. at p. 1, Definitions, Loss.

Significantly, the Agreement also leaves to the discretion of American Manufacturers whether to pay claims submitted under its performance bond, as well as the amount to pay on such claims:

> Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.

Id. at p. 2, ¶5.

Moreover, the Indemnity Agreement gives American Manufacturers, as Surety, the right to complete work under a bonded project, like the Folsom Project at issue in this litigation, at Defendants' expense:

> In the event of a Default,[3] Surety shall have the right, but not the obligation, to take possession of the work under any and all Bonded Contracts, and complete or consent to the completion of such Bonded Contracts at the expense of the Indemnitors.

Id. at p. 2, ¶6.

On June 18, 2003, the City advised American Manufacturers that it had received written notice from CCI of CCI's intent to demobilize from the Folsom Project. The City demanded that American Manufacturers step in to complete the Project in the event of such mobilization.

///

///

///

///

///

///

[3] The Indemnity Agreement defines "Default" as including "[a]n instance or condition in which Indemnitors ... forfeit, breach, abandon, default or [are] declared in default on any Bonded Contract", or "neglect or refuse to pay for any labor or materials used in the prosecution of a Bonded Contract." Id. at p. 1, Definitions, Default.

By letter dated June 26, 2003, the City informed CCI that it considered CCI to have breached/defaulted on its obligations under the construction contract because of CCI's alleged abandonment of the Project, its alleged failure to fulfill contractual requirements, its alleged failure to supply sufficient properly skilled labor to the project, and its alleged failure to make timely payment to subcontractors and suppliers for materials and/or labor expended on the project. On July 18, 2003, the City notified American Manufacturers that it had terminated CCI as of that date for the above-enumerated reasons. The City simultaneously made a formal demand, given that termination, for American Manufacturers to complete the Folsom Project under its performance bond. The City warned American Manufacturers that its failure to commence performance within thirty (30) days would subject it to both liquidated damages and various other costs.

In addition to the City's completion demand pursuant to the terms of its performance bond, American Manufacturers also received twenty (20) separate demands from unpaid subcontractors and suppliers. Six of those unpaid vendors proceeded to file suit against American Manufacturers as CCI's payment bond surety.

With respect to completion of the Folsom Project, American Manufacturers hired a construction consultant and ultimately, on or about October 31, 2003, entered into a Completion Agreement with CCI whereby CCI agreed, in pertinent part 1) to complete the Project under American Manufacturers' direction; 2) to accept specified direct costs for completing the project;

///

and 3) to reaffirm its obligations under the Indemnity Agreement as described above. (See Folsom Completion Agreement, Ex. 12 to Beatty Decl.). In completing the Project under this arrangement, American Manufacturers claims it incurred net completion costs in the amount of $122,850.75.

While American Manufacturers' net completion costs included some of the pre-takeover claims asserted against the performance bond that were resolved at or shortly after the time American Manufacturers assumed responsibility for the Folsom Project, those costs did not include settlement of three different lawsuits as well as an additional claim that were not resolved until later. American Manufacturers claims those to have paid an additional $203,712.73 to resolve those claims.

One of the lawsuits brought by against CCI for its alleged nonpayment of claims for goods and services, George T. Jordan dba Jordan Construction Electric v. Carothers Construction, Inc., et al., Sacramento County Superior Court Case No. 03AS01445, resulted in various cross-complaints, including cross-complaints against the City filed by both CCI and American Manufacturers. While the parties ultimately reached a joint Settlement Agreement dated June 25, 2006, and while American Manufacturers received a monetary payment under the terms of that settlement, CCI received no funds. It nonetheless voluntarily waived, under the Agreement, all its claims against the City "arising directly or indirectly out of, or in any way relating to the Jordan Electric Lawsuit, the cross complaints filed therein, the [Folsom] Project, the [Folsom] Contract, the Bonds, and the Takeover Agreement."

(Settlement Agreement, Ex. 47 to the Beatty Decl., p. 5).

By letter to Defendants dated January 16, 2004, American Manufacturers advised of its intent to seek reimbursement and indemnification for all loss and expense it incurred, pursuant to the terms of the Indemnity Agreement. According to American Manufacturers, Defendants have failed and refused, and continue to fail and refuse, those demands for payment, which now total some $464,572.66 (exclusive of interest) and include, in addition to completion costs and bond claims, both legal, consultant and expert fees and costs.

In opposing American Manufacturers' request for summary adjudication as to its breach of contract and statutory reimbursement claims, Defendants place primary emphasis on the fact that the City, and not CCI, was the party in breach as to the Folsom Project and that accordingly American Manufacturers should not have stepped in, completed the project, and resolved unpaid claims pursuant to its performance bond. Defendants also contend that American Manufacturers acted in bad faith by failing to act in accordance with standard industry practices in its handling of the bonds claims. Defendants contend that American Manufacturers erroneously paid certain claims, overpaid other claims, and wrongfully failed to pass through certain claims made by CCI to the City for payment.

///

///

///

///

///

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); *see also* Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. Chem-Tronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

///

///

///

Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Id. at 250. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

### A. Improper Service

In opposing this Motion, Defendants make a preliminary argument that because of improper service the Motion should be denied on that ground alone without even resorting to the merits of American Manufacturers' claims. Defendants argue that American Manufacturers failed to timely make personal service so as to permit a March 19, 2007 hearing date. As American Manufacturers points, out, however, the Local Rules of this District permit electronic service of documents filed during the pendency of an action. E.D. Local Rule 5-135(a). A document is deemed filed on a particular day if filed prior to midnight on a that business day. Id. at Rule 5-134(b).

Here, American Manufacturers electronically filed and served its motion and supporting papers on February 16, 2007, and scheduled the hearing for March 19, 2007, 31 days later, in compliance with Local Rule 78-230(b). Hence service of this Motion was proper.

**B. Breach of Contract**

California law has long recognized the right of a surety, like American Manufacturers, to be indemnified under the terms a written indemnity agreement. See, e.g., Fidelity & Deposit Co. of Md. v. Whitson, 187 Cal. App. 2d 751 (1960). In order to demonstrate a valid claim for breach of an indemnity agreement under California law, the existence of an indemnity agreement and breach of the agreement following performance must be established. See Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 830 (1968); Four Star Elec., Inc. v. F&H Constr., 7 Cal. App. 4th 1375, 1380 (1991). The obligations of a surety are measured by the terms of its performance bond. City of Sacramento v. Trans Pac. Indus., 98 Cal. App. 3d 389, 400-01 (1979).

Here, the terms of the Indemnity Agreement at issue are clear. Defendants expressly agreed to indemnify and hold American Manufacturers harmless for and any all costs and expenses, including payment to bond claimants as well as all other costs incurred in completing the project upon which American's performance bond was issued.

///

///

The agreement is equally clear that reimbursable costs include all legal, technical and expert expenses incurred in settling claims and completing the Folsom Project.

Defendants do not dispute that monies were expended by American Manufacturers pursuant to its performance bond, although they do dispute the amount of recoverable damages on American's part as discussed in more detail below. As to the fact of Defendants' liability, as opposed to the extent thereof, Defendants' primary argument rests with the assertion that they cannot be liable for breach of contract because American Manufacturers impermissibly assumed responsibility for completion of the Folsom Contract without determining whether CCI, as opposed to the City, actually breached the underlying construction agreement between CCI and the City.[4] Defendants argue that such assessment, as well as a determination that CCI was in breach of the agreement, is a necessary prerequisite for any recovery by American Motorists.

Defendants' position is misplaced. The terms of the Indemnity Agreement itself specify when a "default" occurs that triggers American Manufacturers' obligation to intervene in ensuring that a project is completed and that payment for work and materials in connection with a project has been made.

[4] As Defendants categorically state in their Opposition: "For Surety to prevail as to liability, it must first prove that Defendants were in "Default" on the Folsom Project, and that Plaintiff acted appropriately." Opp., 18:26-28. Defendants maintain that "[i]t was because of the City's breach that the demobilization occurred, and since the City was in breach and Carothers was not, the Surety should not have stepped in to complete the Project. The Surety breached its obligations to Defendants by doing so." Opp., 9:18-20.

As enumerated above, the Agreement states that default occurs when the indemnifying party, here CCI, either abandons, defaults, or is declared in default on the bonded project.

When the City defaulted and terminated CCI after CCI's abandonment of that Folssom Project, that default and termination triggered American's performance bond obligations and its right to be indemnified for completion costs incurred. American was not obligated to make a legal determination as to whether and to what extent either the City or CCI may have breached the Folsom Contract prior to American's takeover and completion of the project.[5] The surety does not have to prove default before acting in accordance with its obligations under a performance bond. Gen. Ins. Co. of Am. v. Singleton, 40 Cal. App. 3d 439, 443-44 (1974). As the Singleton court states: "To require plaintiff to establish a case against the defendants [the indemnitors] in the same manner that a claimant against the indemnitees would have been obligated to do, would defeat the purposes of the clauses in the indemnity agreement allowing the indemnitee to settle claims." Id. at 444.

///

///

---

[5] Defendants spend much of their Opposition arguing that the City in fact was the breaching party. They contend, for example, that the City failed to make timely payments, interfered with the work of subcontractors, failed to approve change orders, and failed to pay for the onsite storage of construction materials despite being obligated to do so. Defendants' attempt to point the finger at the City is disingenuous since CCI executed a settlement agreement waiving and releasing all claims against the City related to the project, and dismissed its lawsuit against the City with prejudice. CCI cannot attempt to avoid its indemnity obligations by relitigating claims that have already been waived, released and dismissed by CCI.

Indemnity agreements like those involved here are intended to facilitate the handling of settlement by sureties and obviate unnecessary and costly litigation. Id. Were the rule to be otherwise, a performance bond surety would have no duty to act until the bond principal and obligee litigated their respective rights and the court determined that the principal was in breach and the obligee was not. As American Manufacturers argues, this would be an absurd result which the law does not support.

Defendants also cannot argue that American Manufacturers is precluded from establishing a breach of contract unless it shows it acted in good faith in handling the performance bonds. Surety indemnity agreements like the one before this Court have been repeatedly upheld and enforced in California and elsewhere as giving rise to a presumption of the reasonableness of the loss and expense incurred by the surety in resolving claims, and consequently the surety's good faith in doing so. See, e.g., Gen. Ins. Co. of Am. v. Singleton, 40 Cal. App. 3d at 444; Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co., 121 F.3d 125, 128 (3d Cir. 1997) (holding that indemnity agreement provisions shift burden to indemnitors to prove bad faith). Consequently, any alleged bad faith on American Manufacturer's part is a defense to liability which must be pleaded and proved by Defendants as opposed to constituting an element of American's prima facie case in showing a breach of contract. Here, Defendants have not even pled an affirmative defense of bad faith, as they must in order to bring that issue before the Court. Failure to plead an affirmative right with specificity waives the right to assert the defense.

See Horton v. Potter, 369 F.3d 906, 911-912 (6th Cir. 2004).

Even assuming Defendants should be permitted to assert a bad faith defense, they have failed to produce any adequate evidence that bad faith on American's part precludes its recovery under the Indemnity Agreement. To successfully establish a bad faith defense, Defendants would had been required to prove that American engaged in "objectively unreasonable conduct" in handling its obligation under the performance bond. See Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co., 47 Cal. App. 4th 464, 483 (1996). The issue of what constitutes such conduct in the context of surety claims handling requires the specialized knowledge of someone with relevant experience in the surety industry. See F.R.E. 702; Randolph v. Collectramatic, Inc., 590 F.2d 844, 848 (10th Cir. 1979). Here no such proof has been provided, either in the form of expert opinion or otherwise.

In sum, the Court finds that American Manufacturers have established, as a matter of law, Defendants' liability under the First Cause of Action, for Breach of the Indemnity Agreement between the parties.

**C. Statutory Reimbursement**

California Civil Code § 2847 establishes a statutory right to reimbursement in favor of a surety making payments under bond obligations. The statute provides in pertinent part as follows:

> If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse he has disbursed, including necessary costs and expenses.

As a Third Cause of Action, American Manufacturers contend that, in addition to having breached the Indemnity Agreement, CCI as the bond principal is also liable for American's disbursements under section 2847.

Aside from the general arguments posited by Defendants against any finding of liability on its part in breaching the Indemnity Agreement, CCI makes no specific argument as to why summary judgment should not be granted as to the merits of American Manufacturers' statutory reimbursement claim. Since those arguments have already been disposed of, the Court finds in favor of American Manufacturers as to the Third Cause of Action.

**D. Damages**

American Manufacturers correctly cites provisions of the Indemnity Agreement establishing that the amounts it paid are prima facie evidence of loss and expense and liability for same. (See, e.g., Indemnity Agreement, Exh. 1 to the Beatty Decl., p. 2, ¶1). American Manufacturers consequently asks the Court to establish the amount of damages for which Defendants are liable.

After carefully examining the evidence, the Court finds that it is impossible to do this at the present juncture. Even if the Court assumes that all monies paid out by American Manufacturers and properly reimbursable under the terms of the Indemnity Agreement, there are other unresolved factors bearing upon Defendants' liability which cannot be determined at this juncture as a matter of law.

Irrespective of the propriety of American Manufacturers' own payments pursuant to the performance bond, which the Indemnity Agreement arguably encompasses, Defendants for example contend that American failed to pass through additional claims on CCI's behalf to the City that should have resulted in a sizable credit against American's payment of in excess of a million dollars.[6] In fact, Defendants assert that "when this additional amount of money is taken into consideration, it exceeds any amount that Surety is claiming in this litigation." (Opp., 11:10-12). Defendants maintain that American Manufacturers refused in bad faith and in breach of its obligations to Carothers to pass this claim through the City, and never included it within the lawsuit eventually brought against the City.

Resolution of this question requires the assessment of factual questions not amenable to determination on summary judgment. Consequently, while the Court finds that Defendants are liable to American Manufacturers under both the terms of the Indemnity Agreement and California Civil Code section 2847, an assessment of damages cannot be made as a matter of law.

///

///

---

[6] The Court rejects American Manufacturers' contention that neither David Carothers, President of CCI, or CCI Controller Debbie Darbonne are qualified to offer evidence as to these additional claims. The Declarations of both Mr. Carothers and Ms. Darbonne attest to these claims and authenticate letters to American's construction consultant, Sage Associates, containing the pass-through demands (Exhibits 20 and 32 to Defendants' Appendix of Evidence re: Folsom Project). Those demands are hence properly at issue, and American's objections to same on grounds of lack of foundation, improper authentication and inadmissible hearsay are accordingly overruled.

**CONCLUSION**

Based on the foregoing, the Court grants summary adjudication as to Defendants' liability under the First and Third Causes of Action.[7] Resolution of any damages, however, cannot be made on summary judgment and that portion of American Manufacturer's Motion is accordingly denied.

IT IS SO ORDERED.

Dated: August 8, 2007

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

[7] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).