1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   AMERICAN MANUFACTURERS            No. 2:05-cv-00122-MCE-GGH
     MUTUAL INSURANCE COMPANY
12   and AMERICAN MOTORISTS
     INSURANCE COMPANY,
13
             Plaintiffs,
14
         v.                            MEMORANDUM AND ORDER
15
     CAROTHERS CONSTRUCTION INC.,
16   DAVID L. CAROTHERS, and
     TERRI L. CAROTHERS,
17
             Defendants.
18

19                         ----oo0oo----

20

21       Through the present action, Plaintiff American Motorists

22   Insurance Company ("American Motorists") seeks to enforce the

23   provisions of a General Indemnity Agreement (the "Indemnity

24   Agreement") executed by Defendants Carothers Construction, Inc.

25   ("CCI"), David Carothers and Terri Carothers as a prerequisite to

26   American Motorists' issuance of security bonds applicable to two

27   public works construction projects for the Los Rios Community

28   College District.  ("Los Rios").

                                    1

American Motorists has ultimately paid claims in excess of $600,000.00 pursuant to is bond obligations along with various other costs and expenses necessitated by CCI's alleged failure to pay subcontractors and suppliers on the two projects.  American Motorists now moves for partial summary judgment against CCI (and David and Terri Carothers, individually) as to its First Cause of Action, for Breach of the Indemnity Contract, and the Second Cause of Action, for Specific Performance.  American Motorists further seeks summary adjudication as to the Third Cause of Action, for statutory reimbursement under California Civil Code § 2847[1] against CCI, only.  As set forth below, American Motorists' Motion is granted in part and denied in part.

///
///
///
///
///
///
///
///
///
///
///

_____

[1]The Court's jurisdiction in this matter is predicated on diversity of citizenship pursuant to 28 U.S.C. §1441(b).  The parties agree that California law applies inasmuch as the Indemnity Agreement contains a choice of law provision specifically providing that it "shall be interpreted under the substantive law of the State of California, USA."  Indemnity Agreement, Exh. 1 to the Decl. of Stephen J. Beatty, p. 4.

1

2

## BACKGROUND[2]

3        On or about October 24, 2002, CCI entered into  contracts

4   with Los Rios for construction of faculty offices located at Los

5   Rios' American River College and Cosumnes River College

6   facilities.  At CCI's request, and as a prerequisite for award of

7   the contracts, American Motorists issued performance bonds on

8   behalf of CCI, as principal, in connection with both projects.

9   Both CCI and its owners, David and Terri Carothers, were

10   signatories on the Indemnity Agreement executed in connection

11   with the issuance of those bonds.  All parties to that Agreement

12   acknowledged that American Motorists would not have issued the

13   performance bond without Defendants' commitment, as Indemnitors,

14   to reimburse American Motorists for all losses arising under the

15   bond.  (See Indemnity Agreement, p. 1, attached as Exh. 1 to the

16   Decl. of Stephen J. Beatty).  The Indemnity Agreement defines

17   that obligation on page 2, paragraph 1, as follows:

18        Indemnitors agree to indemnify and hold harmless Surety
         [American Motorists] immediately upon demand for any and all
19        Loss sustained or incurred by reason of having executed any
         and all Bonds.
20

21   The Indemnity Agreement goes on to define the term "Loss" as

22   follows:

23   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24        [2]Some of the factual allegations as set forth in this
     section are disputed by the parties.  To the extent either party
25   has interposed evidentiary objections to these facts, however,
     those objections are overruled unless otherwise noted.
26   Additionally, this section incorporates the facts considered by
     the Court in ruling on this motion.  The Court need not rule on
27   objections to evidence not discussed below, and declines to do
     so, because that evidence was not germane to the Court's
28   decision.

3

Loss includes all sums: (a.) paid by Surety to claimants under the Bonds, (b.)sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim, including but not limited to legal fees and expenses, technical and expert witness fees and expenses and (d.) all costs and expenses incurred in connection with enforcing the obligations of the Principal and Indemnitors under this Agreement including, but not limited to legal fees and expenses ... and (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

Id. at p. 1, Definitions, Loss.

Significantly, the Agreement also leaves to the discretion of American Motorists whether to pay claims submitted under its performance bond, as well as the amount to pay on such claims:

Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and Surety's decision thereon shall be final and binding upon the Indemnitors.

Id. at p. 2, ¶5.

In the event of payments by Surety, Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors.

Id. at p. 2, ¶1.

///

///

///

///

///

///

///

///

4

1    Beginning in January of 2004, after the both Los Rios
2  projects had been substantially completed,[3] American Motorists
3  received numerous claims submitted by subcontractors and
4  suppliers on both projects who alleged that they had not been
5  paid by CCI.[4]  A total of twenty-one (21) claims were submitted
6  for work and materials furnished in conjunction with the Cosumnes
7  River project, and four of those claims resulted in lawsuits
8  filed against CCI, Los Rios and the surety between January and
9  June of 2004.  Additionally, with respect to the American River
10 project, and additional twenty-six (26) claims and five lawsuits
11 were filed within the same time period.  To assist with the
12 resolution of claims, American Motorist retained a construction
13 consultant experienced in surety matters, Sage Associates, Inc.,
14 and outside legal counsel experienced in surety matters, the law
15 firm of Sedgwick, Detert, Moran & Arnold LLP.

16    Prior to making any payment to claimants under the
17 performance bonds, American Motorists advised CCI of its
18 intention to pay claims and provided the company with a final
19 opportunity to resolve the claims on their own beforehand.
20 Beatty Decl., ¶26, Heacock Dec., ¶12.  American Motorists paid
21 the claims only after CCI failed to do so.  Beatty Decl., ¶26.
22 ///
23 ///

24

25    [3]Los Rios recorded a Notice of Completion for the Cosumnes
26 project on December 8, 2003, and a similar Notice was recorded
   for the American River project on January 22, 2004.

27    [4]The Court notes that one subcontractor, Steeler Inc.,
   submitted claims against both the American River and Cosumnes
28 bonds as early as August 2003.

1    Ultimately, American Motorists alleges it paid some
2    $392,631.82 to settle both the claims and lawsuits submitted in
3    connection with the American River project.  Another $222,416.81
4    was spent to resolve similar claims/lawsuits arising out of the
5    Cosumnes project, and one lawsuit, <u>Calidad Plumbing v. Carothers</u>
6    <u>Constr., Inc.</u>, Sacramento County Superior Court No. 04AM00538,
7    still remains pending.  In addition, because of the multiple
8    claims stemming from both projects, Los Rios has taken the
9    position that it will not release remaining funds to American
10   Motorists without CCI's consent, and CCI has refused to give that
11   consent.  That dispute has prompted the filing of an interpleader
12   action designed to ascertain entitlement to remaining amounts
13   owed by Los Rios totaling $515,798.14.

14   As enumerated above, the Interpleader Agreement's definition
15   of "Loss" includes all costs and expenses incurred in the payment
16   of claims submitted against the performance bonds at issue
17   herein.  The Indemnity Agreement goes on to define "Default" as
18   including "[a]n instance or condition in which Indemnitors ...
19   "neglect or refuse to pay for any labor or materials used in the
20   prosecution of a Bonded Contract".  <u>Id.</u> at p. 1, Definitions,
21   Default.  If default occurs, the Agreement assigns certain rights
22   to American Motorists, including the right to receive bonded
23   contract proceeds, as follows:
24   ///
25   ///
26   ///
27   ///
28   ///

> In the event of a Default, Principal and Indemnitors do hereby assign, transfer and set over to Surety all of their rights under all Bonded Contract(s) including (a.) their right, title and interest in all sub-contracts and purchase orders let in connection therewith ... (c.) All claims and causes of action against any parties to the Bonded Contract(s) or against third parties relating to the Bonded Contract(s) , (d.) any and all sums due, or to become due under the Bonded Contract(s) at or after the time of such default ...

Indemnity Agreement, p.3, ¶7.

By letter to Defendants dated January 11, 2005, Defendants demanded indemnification and reimbursement of their collective loss and expense in connection with the Los Rios claims, which at that point totaled $1,293,937.32.[5]   Defendants' failure to indemnify and reimburse American Motorists as to the amount claimed prompted the present lawsuit.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).   One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

---

[5]This figure included, in addition to amounts directly expended to resolve claims/lawsuits stemming from unpaid suppliers and subcontractors as enumerated above, attorneys' fees and costs, consults's fees and costs, and mediation fees. Following additional payments made by Los Rios, the current reimbursement demand total is $850,831.29.

1    <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

2         Rule 56 also allows a court to grant summary adjudication on

3    part of a claim or defense.  <u>See</u> Fed. R. Civ. P. 56(a) ("A party

4    seeking to recover upon a claim ... may ... move ... for a

5    summary judgment in the party's favor upon all or any part

6    thereof."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F. Supp.

7    374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v. Charter</u>

8    <u>Township of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

9         The standard that applies to a motion for summary

10   adjudication is the same as that which applies to a motion for

11   summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>

12   <u>ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

13        In considering a motion for summary judgment, the court must

14   examine all the evidence in the light most favorable to the non-

15   moving party.  <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

16   Once the moving party meets the requirements of Rule 56

17   by showing that there is an absence of evidence to support the

18   non-moving party's case, the burden shifts to the party resisting

19   the motion, who "must set forth specific facts showing that there

20   is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>,

21   477 U.S. 242, 256 (1986).  Genuine factual issues must exist that

22   "can be resolved only by a finder of fact, because they may

23   reasonably be resolved in favor of either party."  <u>Id.</u> at 250.

24   In judging evidence at the summary judgment stage, the court does

25   not make credibility determinations or weigh conflicting

26   evidence.  <u>See</u> <u>T.W. Elec. v. Pac. Elec. Contractors Ass'n</u>, 809

27   F.2d 626, 630-631 (9th Cir. 1987), citing <u>Matsushita Elec. Indus.</u>

28   <u>Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**ANALYSIS**

**A.   Improper Service**

        In opposing this Motion, Defendants make a preliminary argument that because of improper service the Motion should be denied on that ground alone without even resorting to the merits of American Manufacturers' claims.  Defendants argue that American Motorists failed to timely make personal service so as to permit a March 19, 2007 hearing date.  As American Motorists points, out, however, the Local Rules of this District permit electronic service of documents filed during the pendency of an action.  E.D. Local Rule 5-135(a).  A document is deemed filed on a particular day if filed prior to midnight on a that business day.  Id. at Rule 5-134(b).  Here, American Motorists electronically filed and served its motion and supporting papers on February 16, 2007, and scheduled the hearing for March 19, 2007, thirty-one (31) days later, in compliance with Local Rule 78-230(b).  Hence service of this Motion was proper.

**B.   Breach of Contract**

        California law has long recognized the right of a surety, like American Motorists, to be indemnified under the terms a written indemnity agreement.  See, e.g., Fidelity & Deposit Co. of Md. v. Whitson, 187 Cal. App. 2d 751 (1960).

///

///

1    In order to demonstrate a valid claim for breach of an indemnity

2    agreement under California law, the existence of an indemnity

3    agreement and breach of the agreement following performance must

4    be established.  See Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d

5    822, 830 (1968); Four Star Elec., Inc. v. F&H Constr., 7 Cal.

6    App. 4th 1375, 1380 (1991).  The obligations of a surety are

7    measured by the terms of its performance bond.  City of

8    Sacramento v. Trans Pac. Indus., 98 Cal. App. 3d 389, 400-01

9    (1979).

10       Here, the terms of the Indemnity Agreement at issue are

11   clear.  Defendants expressly agreed to indemnify and hold

12   American Motorists harmless for and any all costs and expenses,

13   including payment to bond claimants as well as all other costs

14   incurred in completing the project upon which American's

15   performance bond was issued.  The agreement is equally clear that

16   reimbursable costs include all legal, technical and expert

17   expenses incurred in settling claims paid by American Motorists.

18       Defendants do not dispute that monies were expended by

19   American Motorists pursuant to its performance bond, although

20   they do dispute the amount of recoverable damages on American's

21   part as discussed in more detail below.  As to the fact of

22   Defendants' liability, as opposed to the extent thereof,

23   Defendants' primary argument rests with the assertion that they

24   cannot be liable for breach of contract because American

25   Motorists has not demonstrated that Defendants breached the

26   underlying construction contracts before stepping in and paying

27   claims.

28   ///

10

1   As stated by Defendants:  "For surety to prevail as to liability,

2   it must first prove that Defendants were in "default" with Los

3   Rios, and that Plaintiff acted appropriately" in adjusting the

4   claims.  Opp., 19:14-16.  Defendants argument is hence two

5   pronged.  First, they contend that an assessment of their default

6   is a necessary prerequisite for any recovery by American

7   Motorists.  Second, they argue that Plaintiff must establish that

8   it handled the bond claims submitted in a good faith manner

9   before they can establish any entitlement to reimbursement from

10   Defendants.

11       Defendants' position is misplaced.  The terms of the

12   Indemnity Agreement itself specify when a "default" occurs that

13   triggers American Motorists' obligation to intervene in ensuring

14   that a project is completed and that payment for work and

15   materials in connection with a project has been made.  As

16   enumerated above, the Agreement states that default occurs when

17   the indemnifying party, here CCI, neglects or refuses to pay for

18   any labor or materials used in connection with a bonded contract.

19   Indemnity Agreement, p. 1, Definitions, Default.  The surety does

20   not have to otherwise prove default before acting in accordance

21   with its obligations under a performance bond.  Gen. Ins. Co. of

22   Am. v. Singleton, 40 Cal. App. 3d 439, 443-44 (1974).  As the

23   Singleton court states:  "To require plaintiff to establish a

24   case against the defendants [the indemnitors] in the same manner

25   that a claimant against the indemnitees would have been obligated

26   to do, would defeat the purposes of the clauses in the indemnity

27   agreement allowing the indemnitee to settle claims."  Id. at 444.

28   ///

Indemnity agreements like those involved here are intended to facilitate the handling of settlement by sureties and obviate unnecessary and costly litigation.  Id.  Were the rule to be otherwise, a performance bond surety would have no duty to act until the bond principal and obligee litigated their respective rights and the court determined that the principal was in breach and the obligee was not.  As American Motorists argues, this would be an absurd result which the law does not support.

Defendants nonetheless attempt to assert that they were not in tardy in making payment to their subcontractors because the terms of CCI's subcontractor agreement contain the following conditional payment provision:

> [CCI] agrees to pay to Subcontractor in monthly progress payments of ninety percent (90%) of labor and materials which have been placed in position, with funds received by [CCI] from [Los Rios] for work performed by Subcontractor as reflected in [CCI's] applications for payment.  Such monthly progress payments shall be made ten (10) days after receipt of payment from [Los Rios] to [CCI].  Final Payment to Subcontractor shall be made ten (10) days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered to and accepted by [Los Rios], Architect, and [CCI], with funds received by [CCI] from [Los Rios] in final payment for work under the prime contract.  **It is the intent of the parties that receipt by [CCI] from [Los Rios] of funds for work performed by Subcontractor shall be a condition precedent to each payment to be made by the Subcontractor pursuant to the provision of this section, and no recourse to [CCI] or its sureties may be made except as otherwise stated herein.**

Beatty Decl., Ex. 67, p. 4, Section 4., Payment Schedule (emphasis added).

///

///

///

///

12

1    According to Defendants, this provision required American
2    Motorists to wait a commercially reasonable time before stepping
3    in and making payment under its performance bond, apparently on
4    grounds that CCI itself had not been paid and that CCI did not
5    yet owe its subcontractors because of the above-quoted language.
6    The Court disagrees.  First, the provision in CCI's
7    subcontracts makes it clear that receipt of funds by CCI is
8    intended to be a "condition precedent" for CCI, in turn, to pay
9    its subcontractors.  In Wm. R. Clarke Corp. v. Safeco Ins. Co. of
10   Am., 15 Cal.4th 882, 885-86 (1997), the California Supreme Court
11   made it clear that where payment to a general contractor is a
12   "condition precedent" to the general contractor's obligation to
13   pay the subcontractor for work the subcontractor has performed,
14   the provision constitutes an unenforceable "pay if paid"
15   provision running counter to public policy.  The Court concludes
16   that CCI's language is indeed an impermissible "pay if paid"
17   provision, since it unequivocally states that payment to CCI
18   "shall be a condition precedent to each payment to the
19   Subcontractor."  While Defendants would argue that the clause
20   survives as a "pay when paid" provision by merely fixing the
21   usual time for payment to the subcontractor (see id. at 885),
22   that is not what the language of CCI's agreement says.  It is not
23   reasonably possible to construe the contractual provision here as
24   anything other than a condition precedent and consequently a pay
25   if paid clause, and the Clarke case holds that such provisions
26   are unenforceable.  Defendants consequently cannot contend that
27   American Motorists' payments were premature in reliance on this
28   provision.

1    In addition, the defense's apparent contention that American
2  Motorists should have waited a "commercially reasonable" time for
3  Los Rios to have paid Defendants (with Defendants then being in a
4  position to pay its subcontractors) ignores the fact that under
5  California law, American had only sixty (60) days to adjust
6  claims under its bonds.  See Cal. Code Regs. tit. 10, §
7  2695.10(b)(1997).[6]  American hence could not sit back and see
8  whether the claims might ultimately resolve without its
9  intervention.  Moreover, under the terms of the underlying
10 construction contracts, American, through CCI, could incur
11 liability for liquidated damages and interest if it did not
12 intervene.  In addition, California Civil Code § 3250 provides
13 that a claimant under a public works payment bond is entitled to
14 a reasonable attorney's fee, and § 3287 goes on to authorize the
15 award of prejudgment interest on sum certain contract claims.  It
16 follows that by stepping forward and paying claims promptly,
17 American's ultimate expenditures, and hence Defendants' ultimate
18 liability, were reduced.  This cannot constitute bad faith.

19   As indicated above, the second part of Defendants' argument
20 involves the propriety of American Motorists' claim handling.
21 Defendants claim that American cannot recover for breach of the
22 Indemnity Agreement unless American establishes that it adjusted
23 the bond claims submitted in good faith.  That argument is also
24 misplaced.

25 ///

26

27    [6]The current versions of California's Fair Claims Settlement
   Practices Regulations did not go into effect until after the
28 claims handling period relevant to this lawsuit.

Surety indemnity agreements like the one before this Court have been repeatedly upheld and enforced in California and elsewhere as giving rise to a presumption of the reasonableness of the loss and expense incurred by the surety in resolving claims, and consequently the surety's good faith in doing so.  See, e.g., Gen. Ins. Co. of Am. v. Singleton, 40 Cal. App. 3d at 444; Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co., 121 F.3d 125, 128 (3d Cir. 1997) (holding that indemnity agreement provisions shift burden to indemnitors to prove bad faith).  Consequently, any alleged bad faith on American Motorist's part is a defense to liability which must be pleaded and proved by Defendants as opposed to constituting an element of American's prima facie case in showing a breach of contract.  Here, Defendants have not even pled an affirmative defense of bad faith, as they must in order to bring that issue before the Court.  Failure to plead an affirmative right with specificity waives the right to assert the defense.  See Horton v. Potter, 369 F.3d 906, 911-912 (6th Cir. 2004).

Even assuming Defendants should be permitted to assert a bad faith defense, they have failed to produce any adequate evidence that bad faith on American's part precludes its recovery under the Indemnity Agreement.  To successfully establish a bad faith defense, Defendants would had been required to prove that American engaged in "objectively unreasonable conduct" in handling its obligations under the performance bond.  See Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co., 47 Cal. App. 4th 464, 483 (1996).

///

Here, despite Defendants' best efforts, they have not shown any such objectively unreasonable conduct.

It was not unreasonable for American Motorists to pay claims. It was obligated to do so under both the terms of its performance bond and California law which, as indicated above, established time parameters for adjusting bond claims. Defendants therefore cannot argue that Plaintiff paid claims prematurely. American Motorists notified CCI of its intent to resolve claims before it did so, yet CCI failed and/or refused to resolve such claims. Nor was it unreasonable for American Motorists to demand that further amounts owed under the construction contracts be paid directly to them.[7] The indemnity agreement provides for such direct payment. In addition, Defendants' argument that American Motorists was owed less than the outstanding balances due from Los Rios at given times ignores the fact both that the Indemnity Agreement calls for assignment and the fact that there remained outstanding claims/lawsuits that had not yet been resolved. Finally, contrary to Defendants' contention, there is no evidence that American Motorists paid time-barred claims.[8]

_____

[7]Although the parties disagree on whether American Motorists agreed to a joint check proposal that allegedly could have permitted earlier payment to suppliers/contractors, American Motorists was under no obligation to agree to such a proposal in any event because the terms of the Indemnity Agreement between the parties authorize payment solely to them.

[8]While Defendants also argue that American Motorists "overpaid" certain claims, given Defendants' unquestionable default they cannot question American Motorists' adjustment. Under the Indemnity Agreement, Defendants agreed to accept evidence of payment as prima facie evidence of the fact and

(continued...)

1    In any event, the issue of what constitutes such conduct in

2    the context of surety claims handling requires the specialized

3    knowledge of someone with relevant experience in the surety

4    industry.  See F.R.E. 702; Randolph v. Collectramatic, Inc., 590

5    F.2d 844, 848 (10th Cir. 1979).  Here no such proof has been

6    provided, either in the form of expert opinion or otherwise.

7    In sum, the Court finds that American Motorists has

8    established, as a matter of law, Defendants' liability under the

9    First Cause of Action, for Breach of the Indemnity Agreement

10   between the parties.

12   **C.   Statutory Reimbursement**

14   California Civil Code § 2847 establishes a statutory right

15   to reimbursement in favor of a surety making payments under bond

16   obligations.  The statute provides in pertinent part as follows:

18   If a surety satisfies the principal obligation, or any part
     thereof, whether with or without legal proceedings, the
19   principal is bound to reimburse he has disbursed, including
     necessary costs and expenses.

21   ///

22   ///

23   ///

26   [8](...continued)
     extent of Defendants' liability.  Indemnity Agreement, Ex. 1 to
     Beatty Decl., p. 2, paragraph 1.  In the event of default,
27   American Motorists, as surety, had the exclusive right to decide
     and determine whether claims should be paid. Id. at p. 2,
28   paragraph 5.

As a Third Cause of Action, American Motorists contend that, in addition to having breached the Indemnity Agreement, CCI as the bond principal is also liable for American's disbursements under § 2847.

Aside from the general arguments posited by Defendants against any finding of liability on its part in breaching the Indemnity Agreement, CCI makes no specific argument as to why summary judgment should not be granted as to the merits of American Motorists' statutory reimbursement claim.  Since those arguments have already been disposed of, the Court finds in favor of American Motorists as to the Third Cause of Action.

**D.  Specific Performance**

American Motorists seeks judgment on its Second Cause of Action, for Specific Performance, thereby requiring Defendants to immediately deposit collateral security with American Motorists in the amount of $142,705.02.  American Motorists has established a reserve in that amount in connection with potential additional loss and expense under the American Motorists Bonds, including, without limitation, resolving the Calidad Plumbing Lawsuit and the Los Rios Interpleader Action, both of which are currently scheduled for trial in state court.

Paragraph 4 of Indemnity Agreement contains Defendants' agreement to, upon demand, deposit collateral security in the form of a sum of money equal to any reserve established by American Motorists.  Based on that Agreement, Defendants are obligated to satisfy the amount of American's reserve.

18

Significantly, Defendants have failed to oppose American's request for summary adjudication on this issue; nor have defendants questioned the amount of the reserve for which security must be posted.  Summary judgment as to the Second Cause of Action is accordingly appropriate.

**E.   Damages**

American Motorists correctly cites provisions of the Indemnity Agreement establishing that the amounts it paid are prima facie evidence of loss and expense and liability for same.  (<u>See, e.g.</u>, Indemnity Agreement, Ex. 1 to the Beatty Decl., p. 2, ¶1).  American Motorists consequently asks the Court to establish the amount of damages for which Defendants are liable.

After carefully examining the evidence, the Court finds that it is impossible to do this at the present juncture.  Even if the Court assumes that all monies paid out by American Motorists and properly reimbursable under the terms of the Indemnity Agreement, there are other unresolved factors bearing upon the extent of Defendants' liability which cannot be determined at this juncture as a matter of law.

///
///
///
///
///
///

Defendants contend, for example, that American Motorists' conduct caused payments from Los Rios to be delayed and that that delay, in turn, made it necessary to litigate previously unknown and unasserted claims relating to the actual construction of the project.[9]

Resolution of such issues requires the assessment of factual questions not amenable to determination on summary judgment. Consequently, while the Court finds that Defendants are liable to American Motorists under both the terms of the Indemnity Agreement and California Civil Code § 2847, an assessment of damages cannot be made as a matter of law.  Moreover, the Court notes that an interpleader action remains pending in state court concerning entitlement to certain Los Rios proceeds that Defendants claim could substantially reduce, or even eliminate, their ultimate liability in this case.  Prior to adjudication of that action it would be premature for this Court to attempt any definitive assessment of American's damages.  Moreover, to the extent that American Motorists is seeking reimbursement of attorneys fees and other damages associated with the ongoing interpleader action and Calidad Plumbing lawsuits, those items also remain in flux.  American's damages hence cannot be calculated by the Court at this juncture.

///

_____

[9]According to Defendants, Los Rios counsel Joel Levy's letter of June 8, 2005 (attached as Ex. 46 to Defendants' Appendix) made for the first time claims for liquidated damages ($46,000.00) and offsets ($49,364.00) that were allegedly spurred by American Motorists' refusal to enter into a timely arrangement to obtain contract proceeds from Los Rios.  See Opp., 13:19-24.

**CONCLUSION**

Based on the foregoing, the Court grants summary adjudication as to American Motorists' Second Cause of Action, for Specific Performance.  Summary adjudication is also granted with respect to Defendants' liability under the First and Third Causes of Action, for Breach of the Indemnity Agreement and statutory reimbursement under California Civil Code § 2847, respectively.[10]  Resolution of any damages pursuant to either the First or Third Causes of Action, however, cannot be made on summary judgment and that portion of American Motorist's Motion is accordingly denied.

IT IS SO ORDERED.

Dated: August 10, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[10]Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).